IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| RONALD BYRD | : | NO.  23-209-1 |

## MEMORANDUM

**Padova, J.**                                                                                          **June 4, 2024**

Defendant Ronald Byrd has been charged in a Superseding Indictment with one count of attempted possession with intent to distribute more than 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846; one count of carjacking, in violation of 18 U.S.C. § 2119; one count of using, carrying, or brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  He moves to suppress evidence that was seized pursuant to three warrants, two authorizing searches of backup data from two iCloud accounts and the third authorizing a search of a rental vehicle that he was driving on the day of his arrest.  In the alternative, Byrd seeks an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), i.e., a "Franks Hearing," based on his assertion that the warrant applications contained false statements and omissions.  For the following reasons, we deny Byrd's Motion in its entirety.

## I.       BACKGROUND

The charges against Byrd in this case arose after a months-long investigation into the carjacking of a Federal Express ("FedEx") truck on August 10, 2022.  He was initially indicted on May 10, 2023, on charges of carjacking, possession with intent to distribute cocaine, and using and carrying a firearm during and in relation to a crime of violence, but the federal investigation continued thereafter.  On May 16, 2023, FBI Special Agent Joseph Donahue sought two warrants

to search Byrd's backup data from two Apple iCloud accounts.  Agent Donohue's probable cause affidavit in support of both warrant applications attested that, on August 10, 2022, at 11:21 a.m., Philadelphia police responded to a report of a robbery near 3500 Grays Ferry Avenue.[1]  (iCloud Affid.  ¶ 19.)  J.H., a FedEx delivery driver, told police that he had been a victim of a carjacking by two individuals.  (Id.)  J.H. reported that P.A., a former FedEx employee, texted and called him on his cellphone that morning, stating that he needed to pick up one of the packages that J.H. was delivering to Temple Hospital that day, asserting that the package was intended for his wife.  (Id. ¶ 21.)  J.H., however, declined to cooperate with P.A.'s request.  (Id.)  As J.H. was later unloading his deliveries at Temple Hospital, P.A. approached him in person and again requested the package. (Id.)  As before, J.H. refused, and he reported the situation to his FedEx manager, R.J.  (Id.)

 R.J. and another manager, D.J., then drove to Temple Hospital to assist J.H.  (Id.)  While J.H. was waiting for R.J. and D.J., P.A. approached him yet again, this time telling him to "name a price" for the package.  (Id.)  When R.J. and D.J. arrived, J.H. and D.J. removed the sought-after package from J.H.'s delivery truck and moved it into D.J.'s FedEx van.  (Id. ¶ 22.)  J.H. then went to his next delivery at Shriners Children's Hospital.  (Id.)  D.J. and R.J. followed J.H. to Shriners Hospital and observed a black Jeep Cherokee nearby.  (Id.)

J.H. next began driving to the FedEx facility located at 3600 Grays Ferry Avenue, with D.J. still following.  (Id. ¶¶ 19, 22.)  Before he reached the facility, his delivery truck was cut off by a black Jeep Cherokee.  (Id. ¶ 19.)  An individual in a ski mask and orange t-shirt got out of the Cherokee and approached J.H. with a gun.  (Id.)  J.H. fled to the FedEx facility, while the carjacker

---

[1] The affidavit in support of the search warrants for the iCloud data (the "iCloud Affidavit"), as well as the two warrants that were issued, are attached as Exhibit 1 to the Government's Response to Byrd's Motion, which is docketed at Docket No. 73.  The iCloud Affidavit begins at page 2 of 61; one warrant begins at page 39 of 61; and the other warrant begins at page 47 of 61.

got into J.H.'s truck and drove away.  (Id.)  Several minutes later, police located the FedEx truck

in West Philadelphia by using the truck's GPS.  (Id. ¶¶ 19-20.)  Investigators subsequently obtained

a search warrant for the package that P.A. was seeking and found that it contained approximately

9.005 kilograms of cocaine.  (Id. ¶ 24.)

P.A. was arrested on the evening of the carjacking.  (Id. ¶ 26.)  He admitted to police that

he had attempted to obtain the package from J.H., and he stated that he was acting on behalf of an

individual he called "Ty," who was one of the occupants of the black Jeep Cherokee.  (Id. ¶ 27.)

P.A. also stated that he had been in phone contact with "Ty" before and during his attempts to

obtain the package.  (Id.)  He further disclosed that he had provided "Ty" with a cell phone number

for J.H., so that he could contact J.H. directly.  (Id.)

P.A. was subsequently charged with his role in the package theft scheme and, in connection

with his arrest, he provided a second statement to police.  (Id. ¶ 33.)  In that statement, he referred

to "Ty" as "Bird" or "Birdman," and he stated that "Birdman" lived in the area of North Park Ave

and West Cambria Street in the 25th Police District.  (Id.)  P.A. told the investigators that he had

known "Birdman" since 2021, when he would occasionally steal FedEx packages and sell the

stolen items to "Birdman." (Id.)  He added that in July of 2022, Birdman had asked him to intercept

a package from FedEx, and although P.A. no longer worked for the company, he got a former co-

worker to intercept the package.  (Id.)  P.A. believed that this might have been a test to determine

if he would do as promised.  (Id.)

Investigators contacted the 25th Police District, attempting to locate "Birdman."  (Id. ¶ 34.)

Police officers in that District advised investigators that an individual named Ronald Byrd

frequented the area and had had numerous interactions with police.  (Id.)  Having received this

information, investigators showed a single photograph of Byrd to P.A., who stated that he was the

individual P.A. knew as "Ty" or "Birdman." (Id. ¶ 35.) On two different dates, they also showed a video of the crime taken from the inside of J.H.'s FedEx truck to Byrd's probation officer, who stated on both occasions that the driver during the carjacking was Byrd, explaining that she recognized him based on his distinctive head shape and eyebrows, as well as his lack of arm tattoos. (Id. ¶¶ 37-38.)

J.H. also provided investigators with his cell phone number and allowed investigators to review the contents of his phone. (Id. ¶ 29.) Those cell phone records showed text messages with P.A. and revealed two calls from a phone number ending in 6628 (the "6628 number") "directly following" P.A.'s contacts with J.H. (Id. ¶¶ 29-30.) Investigators obtained a search warrant for cell site location data for the 6628 number. (Id. ¶ 31.) The records did not include any subscriber information, but analysis of the call detail records showed that the number made two calls to J.H. at 10:44 a.m. and 10:54 a.m., less than 30 minutes before the carjacking. (Id. ¶¶ 31-32.) The records also disclosed that those calls were transmitted using cellular towers near Temple Hospital. (Id.) The records also showed that the phone's "most used cellular towers" were towers that served the area that included Byrd's home address at 1302 West Auburn Street. (Id. ¶ 32.)

Agent Donohue stated in his affidavit that the FBI had identified two Apple iCloud accounts belonging to Byrd. (Id. ¶¶ 41-42.) He explained that Byrd's probation officer had provided investigators with two phone numbers that she could use to contact him. (Id. ¶ 39.) By issuing subpoenas to Apple, investigators determined that the two phone numbers were associated with the two iCloud accounts. (Id. ¶¶ 41-42.) Having also learned in their investigation that Byrd commonly used Apple iMessage and Facetime to communicate, and, indeed, had used Facetime to communicate with P.A. during the commission of the offenses here, investigators posited that

the iCloud backup data associated with Byrd's two accounts would likely contain evidence of the carjacking and narcotics offenses as well as evidence about Byrd's accomplices.  (Id. ¶¶ 4, 43, 45.)

On May 16, 2023, Magistrate Judge Lynne A. Sitarski found probable cause to believe that evidence of the charges in Byrd's indictment would be found in Byrd's two iCloud accounts, and issued search warrants for both accounts.  The data produced in response to those warrants included iMessages between Byrd and P.A., including on the day of the carjacking.  (See Gov't Mem at 7.) The data also included iMessages between Byrd and others about paying for an attorney for P.A. after his arrest, and messages between Byrd and his co-defendant Saikeen Dixon shortly before the carjacking with location information suggesting that Byrd was at Temple Hospital.  (Id.)

On May 22, 2023, Byrd was arrested at the Philadelphia Passport Agency at 9th and Market Streets, and three days after that arrest, Agent Donohue sought a search warrant for a 2023 Dodge Ram Big Horn truck that Byrd had rented from Avis car rental and driven into Center City Philadelphia.[2]  (Rental Affid. ¶¶ 1, 19, 20, 23.)  The affidavit in support of that warrant application detailed the evidence that had been compiled regarding of Byrd's involvement in the August 10, 2022 carjacking and then described the day of Byrd's arrest.  Agent Donohue stated in the affidavit that when Byrd was arrested, he was asked if he had driven to Center City that day, and he replied that he had taken a bus.  (Id. ¶ 19.)  However, when he was subsequently searched incident to his arrest at the FBI's Philadelphia office, agents found a key fob for a Dodge pickup truck with an Avis Car Rental tag.  (Id. ¶ 20.)  Agents asked if he had parked the truck in Center City, and he then stated, contrary to his prior statement, that he had taken the subway into the City.  (Id.)  Given

---

[2] The affidavit in support of the search warrant for the rental vehicle ("Rental Affid.") and the resulting warrant are attached as Exhibit 2 to the Government's Response to Byrd's Motion, which is docketed at Docket No. 73-1.  The affidavit begins on page 7 of 43 and the warrant begins on page 25 of 43.

Byrd's conflicting accounts of how he got to the Passport Office that day and his possession of a key fob for a rental truck, agents went to the area of 9th and Market to try to locate the rental vehicle. (Id.) They found the truck in a lot at 8th and Chestnut Streets. (Id. ¶ 21.) They could see in plain view a cell phone in the area between the two front seats and a black balaclava or ski mask, which was consistent with what the carjacker was wearing at the time of the August 10th carjacking. (Id. ¶ 21.) Agent Donohue then drove the car to an FBI garage to secure it while he sought to obtain a search warrant. (Id. ¶ 22.)

In his affidavit, Agent Donohue stated that Avis's records confirmed that Byrd had rented the truck. (Id. ¶ 23.) In addition, Byrd made recorded jail calls to his girlfriend, asking if she had found his truck in the lot on 8th Street, between Market and Chestnut. (Id. ¶ 24.) While Agent Donohue stated that he had reason to believe that as-yet-unrecovered evidence from the carjacking and related drug offense would be in the truck because, inter alia, Byrd had no firm address at which to keep his valuables, the balaclava seen in the vehicle resembled one used in the carjacking, the cellphone in plain view was Byrd's third (two others had been found on his person), and Byrd had attempted to conceal the rental vehicle from investigators. (Id. ¶ 31.)

Magistrate Judge Elizabeth Hey found probable cause to believe that evidence of the charges in Byrd's indictment would be found in the rental vehicle, and she issued the requested warrant on May 25, 2023. When agents executed the warrant, they recovered from the rental truck a Glock, model 27, .40 caliber pistol, loaded with 14 live rounds. (Gov't Mem. at 10.) They also recovered two cell phones, as well as a pair of New Balance sneakers that matched ones that Byrd wore during the carjacking. (Id.)

Upon consideration of the evidence recovered from the three warrants and obtained from other sources, a grand jury returned a September 27, 2023 Superseding Indictment, which added a

charge against Byrd for possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g), and also added against Byrd's now-identified co-defendant, Saikeen Dixon.

## II.     LEGAL STANDARD

The Fourth Amendment guarantees the right of persons to be secure from "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause is established if there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). A warrant violates the Fourth Amendment's particularity requirement if it fails to "describe the place to be searched and the items to be seized with particularity." United States v. Rankin, 442 F. Supp. 2d 225, 229 (E.D. Pa. 2006). This requirement "is intended 'to prevent the police from undertaking a general, exploratory rummaging through a person's belongings.'" Bartholomew v. Pennsylvania, 221 F.3d 425, 428 (3d Cir. 2000) (quoting United States v. Johnson, 690 F.2d 60, 64 (3d Cir. 1982)). "An overly broad warrant 'describe[s] in both specific and inclusive generic terms what is to be seized,' but . . . authorizes the seizure of items as to which there is no probable cause." See United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents, 307 F.3d 137, 149 (3d Cir. 2002) (second alteration in original) (quoting United States v. Christine, 687 F.2d 749, 753 (1982)). Where a warrant is overly broad, it "can be cured by redaction, that is, by 'striking from [the] warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and preserving those severable phrases and clauses that satisfy the Fourth Amendment.'" Id. at 149 (alteration in original) (quoting Christine, 687 F.2d at 754).

The "principal means . . . for effectuating the rights secured by the Fourth Amendment is through the judicially created exclusionary rule."  <u>Christine</u>, 687 F.2d at 757.  The party who files a motion to suppress evidence bears the burden of proving the Fourth Amendment violation.  <u>Rakas v. Illinois</u>, 439 U.S. 128, 130 n.1 (1978) (citations omitted).

## III.   DISCUSSION

In his Motion to Suppress, Byrd asks us to suppress all of the evidence seized in connection with the searches of his iCloud accounts and the rental car or, in the alternative, asks for a <u>Franks</u> hearing to prove that suppression is warranted.[3]   The Government opposes the suppression motion in all respects.

### A.   Warrants for iCloud Accounts

Byrd challenges the warrants authorizing a search of his iCloud accounts on a number of different bases.  He contends that the warrants lack particularity and are overbroad, that they are unconstitutional "geofence" warrants, and that Agent Donohue's affidavit, on its face, does not establish probable cause for the warrants' issuance because of specific inadequacies.   In the alternative, he contends that the affidavit in support of the warrants contains false statements and omissions, for which he is entitled to a <u>Franks</u> hearing and that, in the absence of the false and misleading material, probable cause was lacking.

---

[3] Byrd filed an almost identical motion to suppress in another case pending against him in this Court, which is based on evidence seized pursuant to the iCloud warrants.  <u>See</u> <u>United States v. Byrd</u>, Crim. A. No. 23-454-2, 2024 WL 1836504 (E.D. Pa. Apr. 26, 2024).   Judge Wendy Beetlestone denied that motion in a Memorandum Opinion and Order dated April 26, 2024.  <u>Id.</u> We have considered Judge Beetlestone's Opinion, but independently analyze Byrd's Motion in this case.

1.   Overbreadth

Byrd argues that Judge Sitarski erred in issuing search warrants for his iCloud accounts because the warrants were overbroad insofar as they (1) authorized the search of iCloud data from June 1, 2022 to April 30, 2023, and (2) "lack[ed] particularity as to what agents would be searching for." (Byrd Mem. at 24.)  Byrd argues that because of these infirmities, both warrants are defective, and we should suppress all evidence that was seized.

As an initial matter, the remedy that Byrd seeks is only available for an unconstitutional general warrant, not a warrant that is merely overbroad.  A general warrant is one that "vest[s] the executing officers with unbridled discretion to conduct an exploratory rummaging through [defendant's] papers in search of criminal evidence." Christine, 687 F.2d at 753.  "It is beyond doubt that all evidence seized pursuant to a general warrant must be suppressed." Id. at 758 (citation omitted).  In contrast, where a warrant is simply overbroad, not general, the remedy is to "strik[e] from [the] warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and preserving those severable phrases and clauses that satisfy the Fourth Amendment." Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents, 307 F.3d at 149 (second alteration in original) (quoting Christine, 687 F.2d at 754).  Byrd argues only simple overbreadth here, making redaction his only possible remedy.  However, instead of proposing appropriate redactions, he simply asks us to find the "entire warrant defective."  (Byrd Mem. at 25.)  Under these circumstances, we may deny his overbreadth challenge based solely on his failure to request available relief.  We will, however, also address his objections to the breadth and particularity of the warrants.

Byrd primarily argues that the warrants are temporally overbroad insofar as they authorize searches of data beyond August 10, 2022, the date on which the alleged crimes occurred.

He asserts that "[t]here is nothing to show why a ten-month span was necessary" because the affidavit does not demonstrate why Agent Donohue "believed there would be messages past the week of August 10th about the alleged crime." (Id. at 24.)  Contrary to Byrd's assertion, however, Agent Donohue's affidavit specifically avers that after P.A. was arrested in August of 2022, Byrd and his co-conspirators continued to contact him "regarding the charges against him, including as recently as a FaceTime Conversation in late March or early April of 2023." (iCloud Affid. ¶ 46.) The affidavit therefore fully supports a time frame that extends to April 30, 2023, and we reject Byrd's  contention to the contrary.

Byrd also contends that the warrants lack particularity because they do not adequately describe what the agents were searching for.  This argument is curious given that both warrants, in their respective Attachment Bs, contain exhaustive descriptions of the information Apple was to disclose and the information the Government was to seize.  (iCloud Warrants, Attachs. B.) Those descriptions make clear that the Government was searching for "fruits, contraband, evidence and instrumentalities of" the alleged drug, gun, and carjacking crimes, including, among other things, emails and messages relating to the charged offenses, information about devices using the accounts, and the identity of other individuals communicating with Byrd concerning charged offenses.  (Id. Attachs. B ¶ II.)  Byrd does not attempt to articulate how these detailed descriptions fail to satisfy the particularity requirement,[4] and we are at a loss as to how they could.  Accordingly, we reject his contention that the warrant was unconstitutionally overbroad based on both a lack of particularity and an overinclusive time frame.

---

[4] Defendant states that "[t]he warrant sought was only for drugs, guns of the carjacking crime alleged to have occurred on August 10, 2022," which is plainly inaccurate, as the warrants sought iCloud data.  (Byrd Mem. at 24.)

2.   Geofence Warrant

Byrd argues that the warrants are unconstitutional "geofence" warrants.  "[G]eofencing is a technique law enforcement has increasingly utilized when the crime location is known but the identities of suspects is not."  United States v. Rhine, 652 F. Supp. 3d 38, 66 (D.D.C. 2023) (citation omitted).  "A geofence warrant authorizes the seizure of location data collected from smartphones of individuals within a particular area over a specified range of time."  Id.  As one court observed, "it is easy for a geofence warrant, if cast too broadly, to cross the threshold into unconstitutionality because of the lack of probable cause and particularity, and overbreadth concerns under Fourth Amendment jurisprudence."  Matter of Search Warrant Application for Geofence Location Data Stored at Google Concerning an Arson Investigation, 497 F. Supp. 3d 345, 353 (N.D. Ill. 2020).  This is because a geofence warrant, if not narrowly tailored both geographically and temporally, will unnecessarily capture "large amounts of location data for uninvolved individuals."  Matter of Search of Information that is Stored at Premises Controlled by Google LLC, 579 F. Supp. 3d 62, 90 (D.D.C. 2021) (quotation and citation omitted).

In the instant case, Byrd's geofence argument fails for the simple reason that the warrants for Defendant's iCloud data were not geofence warrants.  They did not seek all user data for a geographic area during a defined time period.  Rather, they only sought Byrd's user data associated with two specific iCloud accounts within a specified time period.  Thus, unlike a geofence warrant, the warrants did not threaten to sweep so broadly as to capture unnecessary location data for uninvolved individuals, and Byrd's attempt to characterize the warrants as an unconstitutional geofence warrants fails.

11

3.   Probable cause

Byrd also argues that we should suppress all of the data seized in connection with the iCloud search warrants, because Judge Sitarski erred in concluding that there was probable cause for the issuance of the warrant.  A reviewing court "exercise[s] deferential review of a magistrate's probable cause determination and uphold[s] it if the magistrate had a 'substantial basis' to determine, under the totality of the circumstances, that there is a 'fair probability' that 'evidence of a crime will be found in a particular place.'"  United States v. Laury, No. 21-2703, 2022 WL 17091120, at *2 (3d Cir. Nov. 21, 2022) (quoting United States v. Ritter, 416 F.3d 256, 262-63 (3d Cir. 2005)), cert. denied, 143 S. Ct. 1041 (2023).  Byrd maintains that Judge Sitarski erred in finding probable cause for the issuance of the warrant for a few different reasons.

First, Byrd argues that the requisite probable cause was lacking because Agent Donohue's affidavit did not support a conclusion that there was a fair probability that evidence of a crime would be found in his email.  In this regard, he emphasizes that the affidavit averred only that Byrd communicated with his co-conspirators using FaceTime, not email.  Byrd's focus on his email, however, is misguided, because the warrant was for his iCloud backup data, not merely his email. That backup data contained not just emails, but also information about the devices associated with Byrd's iCloud accounts, subscriber information, the contents of iMessages and other text messages, FaceTime logs, photos, address books, notes, and calendars, and information about where devices using the accounts were located.  (See iCloud Warrants, Attachs. B.)  The probable cause affidavit set forth an ample basis for these searches because it documented Byrd's association with both iCloud accounts as well as his use of FaceTime to communicate with his co-conspirators.  (iCloud Affid. ¶¶ 39-43, 46.)  The affidavit therefore sufficiently established a fair probability that evidence of Byrd's crimes would be found in his iCloud backup data.  Accordingly,

we reject Byrd's argument that the absence of averments that he communicated with his co-conspirators by email in any way undermines Judge Sitarski's determination that there was probable cause to search his iCloud accounts.

Byrd next argues that Agent Donohue's affidavit failed to establish probable cause for the searches of his iCloud accounts because it relied on information from P.A. and there is no information in the affidavit to support P.A.'s credibility. While "an informant's 'veracity' and 'reliability'" are relevant to a probable cause determination, they "should [not] be understood as entirely separate and independent requirements to be rigidly exacted in every case." United States v. Stearn, 597 F.3d 540, 555 (3d Cir. 2010) (alteration in original) (quoting Illinois v. Gates, 462 U.S. 213, 230 (1983)). Rather, "[a] magistrate may issue a warrant relying primarily or in part upon the statements of a[n] . . . informant, so long as the totality of the circumstances gives rise to probable cause." Id. To that end, in setting forth the basis for probable cause, an affiant "may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." Gates, 462 U.S. at 241-42 (quotation omitted).

In this case, Agent Donohue's affidavit detailed how the police investigation had corroborated much of P.A.'s statement. Specifically, J.H. confirmed that, on the day of the carjacking, P.A. texted and called him and then showed up at Temple Hospital seeking to obtain a package. (iCloud Affid. ¶ 21.) A review of J.H.'s text messages also confirmed the initial text from P.A. that day. (Id. ¶ 29.) The affidavit also stated that surveillance footage from Temple Hospital on the day of the carjacking not only showed the black Jeep Cherokee travelling back and forth at different time on the ramps leading to the loading dock, but also showed the occupant of a Nissan Pathfinder that was registered to P.A. communicating with someone in the Jeep Cherokee.

(Id. ¶ 25-26.)   In addition, P.A.'s identification of Byrd was corroborated by Byrd's probation officer.  (Id. ¶ 38.)  Consequently, there was ample independent verification of enough important aspects of P.A.'s account to support P.A.'s credibility and to permit reliance on his account in establishing probable cause, and we reject Defendant's assertion to the contrary.

Finally, Byrd argues that there was no probable cause to issue the warrants because the witness identifications in the affidavit were unduly suggestive.   Specifically, Byrd complains both that his probation officer was told that he was under investigation before being shown the video of the carjacking and that P.A. was shown only one photograph when asked to identify Byrd, instead of being shown photo array.  As an initial matter, the identifications that Byrd challenges "need not be admissible at trial to support probable cause."  United States v. McKinnon, Crim. A. No. 20-133, 2021 WL 37637, at *5 (W.D. Pa. Jan. 5, 2021) (citing Stansbury v. Wertman, 721 F.3d 84, 91 & n.7 (2d Cir. 2013)).  We nevertheless consider the totality of the circumstances and ask whether the "identification procedure [was] so suggestive that it undermines the reliability of the resulting identification." United States v. Caple, 403 F. App'x 656, 660 (3d Cir. 2010) (quoting United States v. Lawrence, 349 F.3d 109, 115 (3d Cir. 2003)).   Ultimately, an identification procedure only raises concerns if it is "'(1) unnecessarily suggestive, and (2) creates a substantial risk of misidentification.'"  United States v. Singleton, Crim. A. No. 11-076, 2013 WL 3196378, at *8 (E.D. Pa. June 25, 2013) (citing United States v. Brownlee, 454 F.3d 131, 137 (3d Cir. 2006).

Here, we will accept Byrd's premise that the procedures giving rise to the probation officer's and P.A.'s identifications were suggestive.   It is nevertheless plain that, under the totality of the circumstances, they did not give rise to a "substantial risk of misidentification."  Id.  Where, as here, the witnesses providing the identification were "previously familiar" with the defendant, the identification's reliability is "*enhance[d]*."  Baynard v. Sapienza, Civ. A. No. 20-7723, 2022

WL 2093186, at *8 (D.N.J. June 10, 2022) (citing <u>United States v. Dennis</u>, Crim. A. No. 17-0246, 2018 WL 6266809, at *6 & n.41 (M.D. Pa. Nov. 30, 2018)) (additional citation omitted).  This is because "where a witness is shown to have had prior familiarity with a defendant, . . . no amount of police suggestion is likely to have influenced the witness's identification."  <u>United States v. Veloz</u>, 109 F. Supp. 3d 305, 312 (D. Mass. 2015) (quoted with approval in <u>Baynard</u>, 2022 WL 2093186, at *8)).

In this case, the affidavit detailed that Byrd's probation officer had met with Byrd between 15 and 20 times in person, making her familiar with his appearance.  (iCloud Affid. ¶ 37.)  Indeed, the affidavit recounts that "as soon as she saw the video [in November 2022,] she said "'that's him,'" observing that the carjacker had a distinctive long and narrow head shape and deep set eyes that were consistent with Byrd's appearance.  (<u>Id.</u> ¶ 38.)  And when the probation officer was shown the video a second time in March of 2023, she again said "'that's BYRD'" and, on that showing, she observed that the carjacker had Byrd's distinctive eyebrows and lack of arm tattoos.  (<u>Id.</u>)  Given the probation officer's familiarity with Byrd and easy identification of him in the video based on specific physical features, her identification did not present a "substantial risk of misidentification," <u>Singleton</u>, 2013 WL 3196378, at *8, and we cannot find that Judge Sitarski erred in relying on the probation officer's identification of Byrd along with other evidence in finding probable cause to issue the warrants.

Similarly, the affidavit recounted that P.A. told investigators that he first began dealing with "Birdman" in 2021, had numerous interactions with him, and knew that he was from the area of North Park Ave and West Cambria Street in the 25th Police District.  (<u>Id.</u> ¶ 33.)  Investigators then worked with police in the 25th Police District to ascertain who "Birdman" might be, and the district police identified Byrd as an individual with a similarly sounding name who frequented that

area.  (Id. ¶ 34.)  Investigators then showed P.A. a photo of Byrd to determine if he was the individual that P.A. knew as "Birdman," and P.A. confirmed that he was.  (Id. ¶ 35.)  Accordingly, P.A., like Byrd's probation officer, was not being asked to identify an individual with whom he had no familiarity, and his identification, though arguably the result of suggestive procedures, did not give rise to a "substantial risk of misidentification" under a totality of the circumstances. Singleton, 2013 WL 3196378, at *8.  Thus, we cannot find that Judge Sitarski erred in relying on P.A.'s identification in finding that there was probable cause for the issuance of the search warrants.  For all of these reasons, we reject Byrd's argument that, because of the asserted deficiencies, the affidavit, on its face, was insufficient to support Judge Sitarski's probable cause determination.

### 4.  Franks Hearing Request

In the alternative to immediate suppression of the evidence seized pursuant to the search warrants for the iCloud accounts, Byrd asks for a Franks hearing, contending that the affidavits in support of the warrants contained false and misleading statements.  In order to establish a right to a Franks hearing, a defendant must make a "substantial preliminary showing" "(1) that a warrant application contained false statements made with reckless disregard for the truth and (2) that the remaining truthful statements, standing alone, do not establish probable cause."  United States v. Desu, 23 F.4th 224, 234 (2022) (quoting Franks, 438 U.S. at 170, 171-72).  "To carry [this] burden, [the defendant] cannot 'rest on mere conclusory allegations or a "mere desire to cross-examine"' but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses.'"  Id. (quoting United States v. Yusef, 461 F.3d 374, 383 n.8 (3d Cir. 2006)).  The false statements that a defendant identifies may be either omissions or assertions.  Id.  "[O]missions are made with reckless disregard for the truth when

an officer recklessly omits facts that any reasonable person would know that a judge would want to know.  Id. (alteration in original) (quoting Wilson v. Russo, 212 F.3d 781, 783 (3d Cir. 2000)).  "[A]ssertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting."  Id. (alteration in original) (quoting Wilson, 212 F.3d at 783).

The only evidence that Byrd has submitted in an attempt to contradict Agent Donohue's affidavit are T-Mobile call detail records for the 6628 number, which he attached to his reply brief in support of his Motion.  He maintains that the attached records show that the affidavit was incorrect insofar as it states that the phone's "most used cellular towers serve the area encompassing BYRD's address of record (1302 W. Auburn Street, Philadelphia . . . )."  (iCloud Affid. ¶ 32.)  He specifically asserts that the records show that "Byrd's alleged residence's tower at 1831 Allegheny Avenue was used a total of 61 times; 2701 [N]. Broad Street was used 52 times; and 1540 [N]. 26th Street was used 51 times."[5]  (Byrd Reply Br. at 1.)  We are unable to verify the numbers that Byrd has calculated because he provides no assistance in interpreting the 48 pages of disjointed records attached to the reply brief.  Moreover, even accepting his calculations as correct, he does not elaborate on why those calculations disprove Agent Donohue's assertion that the most used towers serviced the area encompassing Byrd's residence.  Using Google maps, and calculating walking distance, it appears that the tower at 2701 N. Broad Street tower is just .2 miles from Byrd's home address, and the tower at 1831 W. Allegheny Avenue is just one mile from that address.  Byrd does not identify a tower that is closer to his residence and does not assert or attempt to prove that either of these two towers within a mile of his home address do not service the area of his residence.  Accordingly, Byrd has failed to

---

[5] We have corrected the addresses to which Byrd refers to conform to those that appear on the records that he attaches.

make a substantial preliminary showing that the affidavit's statement about the phone's most-used towers was either false or misleading.

Byrd has argued that other statements in, and omissions from, the affidavit were false and/or misleading, but he has made no offer of proof to support his arguments and, in addition, the statements he targets are not false, made with reckless disregard for the truth, and/or material. First, Byrd targets the statement in the affidavit that "[d]irectly following P.A.'s contact[] with J.H., J.H. received two calls from" the 6628 number. (iCloud Affid. ¶ 30.) He argues that this is misleading because P.A.'s message and call to J.H. were made at 8:49 a.m. and the calls from the 6628 number were not made until 10:44 and 10:54. However, it is unclear where Byrd finds the fact that the first call or text from P.A. was at 8:49 a.m., and he points to no evidence to support that assertion. That problem aside, it is also plain that he simply misreads the affidavit because it did not say that the 10:44 call directly followed a prior <u>call</u> or <u>text</u> from P.A. but rather, said that the 10:44 call directly followed P.A.'s "contacts with J.H." (<u>Id.</u>) According to the affidavit, P.A. not only called and texted J.H. on August 10, 2022 as J.H. was driving to Temple hospital, but also twice approached P.A. in person at the hospital. (Affid. ¶ 21.) Accordingly, Byrd has failed to make a substantial preliminary showing that the "directly after" language was false or misleading.

Byrd also argues that the affidavit is false and misleading insofar as it (1) states that P.A., in his first interview with investigators, identified the suspect as "Ty" and (2) does not explain why P.A. later identified the suspect as "Bird" or "Birdman." According to Byrd, P.A. actually stated in his first interview that he could "only" identify the person as "Ty." Byrd maintains that the misrepresentation of P.A.'s words in the affidavit (by omitting "only") is material because it calls into question P.A.'s statement in his second interview with investigators, which was two months later, that he also knew the suspect as "Bird" or "Birdman." (iCloud Affid. ¶¶ 27, 33.) However, Byrd offers no evidence to support his assertion that the affidavit inaccurately describes P.A.'s initial statement to investigators.

18

Moreover, the affidavit candidly disclosed that P.A. first identified the suspect as "Ty," and only later identified him as "Bird" or "Birdman."   While Byrd complains that the affidavit omitted any explanation as to "why" P.A. did not disclose the "Bird" or "Birdman" names in the first interview, Byrd himself points to no additional evidence to explain why P.A. provided different names in his second interview and merely speculates that the additional names were suggested to P.A. by law enforcement.   As noted above, an omission from an affidavit is only "made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know." Desu, 23 F.4th at 234 (citing Wilson, 212 F.3d at 783).   No reasonable person would think that a judge would want to be informed of baseless speculation as to an informant's motives.   Accordingly, it is plain that Agent Donohue did not act with reckless disregard in omitting from his warrant application sheer speculation as to P.A.'s motivation.   Under all of these circumstances, Byrd has not made a substantial preliminary showing that he is entitled to a Franks hearing concerning the affidavit's account of P.A.'s identification of Byrd.

Byrd also argues that the affidavit improperly omits additional information as to P.A.'s credibility, including any benefit that P.A. may have received from the Government for his cooperation as well as information that another witness, N.C., provided a statement that contradicted portions of P.A.'s statement.   However, again, Byrd makes no offer of proof as to either of these matters. Moreover, because the affidavit described P.A.'s involvement in the package theft scheme, for which he was arrested, and recounted that his second statement was given subsequent to that arrest for his involvement in that scheme, it was already readily apparent from the affidavit that P.A. had a motivation to lie. Desu, 23 F.4th at 236 (rejecting argument that affiant should have included in affidavit that the Government had agreed to make a departure motion based on substantial assistance at informants' sentencing hearing, where the affidavit "described [the informants'] wrongdoing in detail" and "a court reviewing the affidavit would understand the full extent of the informants'

motivation to lie.")  As a result, information as to any specific benefit that P.A. may have been offered—if he was offered any specific benefit—was not material to an assessment of his credibility and ultimately, to the probable cause analysis.

Similarly, Byrd's assertion that N.C. gave a statement that contradicted portions of P.A.'s statement and thereby undermined P.A.'s credibility, even if supported by an offer of proof, would not be  material to the probable cause analysis.  See United States v. Frost, 999 F.2d 737, 743 (3d Cir. 1993) ("[W]here an omission, rather than a misrepresentation, is the basis for the challenge to the affidavit, a court should ask whether the affidavit would have provided probable cause if it had contained a disclosure of the omitted information." (quoted with approval in United States v. Carney, 717 F. App'x 185, 187 (3d Cir. 2018)).)  This is not only because Judge Sitarski was already aware of P.A.'s motivation to lie, but also because the critical portions of P.A.'s account were corroborated by other evidence, including J.H.'s cell phone records showing both that P.A. had texted him on the morning of the carjacking and that the 6628 number called J.H. shortly after P.A. gave J.H.'s number to Byrd, and Byrd's probation officer's identification of Byrd as the carjacker.  (iCloud Affid. ¶¶ 27-29, 38.)  Byrd also provides us with no basis to believe that Agent Donohue was aware of any contradictions between N.C.'s account and P.A.'s account, such that we could find that he has made a substantial preliminary showing that Agent Donohue recklessly omitted facts concerning those contradictions.  For all of these reasons, Byrd has failed to establish that he should be afforded a Franks hearing concerning the affidavit in support of the iCloud warrants.

B.   Warrant for Rental Vehicle

Byrd also argues that we should suppress the evidence recovered from the rental truck pursuant to Judge Hey's search warrant because the evidence was the fruit of an unlawful search.  As we understand his argument, he does not claim that the warrant, on its face, failed to set forth probable cause for a search, but argues only that officers unlawfully "searched" his car prior to obtaining the

warrant because they used his key fob to open the vehicle and then drove the truck from the parking garage where they found it to the FBI garage.  (See Byrd Mem. at 27 (citing United States v. Dixon, 984 F.3d 814, 820 (9th Cir. 2020) (concluding that insertion of key into minivan's lock was an "intru[sion] onto a constitutionally protected area" under circumstances presented)).)

Because Byrd's allegation concerns his rental vehicle, the automobile exception to the search warrant requirement applies.  Under that exception "where there [is] probable cause to search a vehicle 'a search is not unreasonable if [it is] based on facts that would justify the issuance of a warrant, *even though a warrant has not been actually obtained*.'"  Maryland v. Dyson, 527 U.S. 465, 467 (1999) (quoting United States v. Ross, 456 U.S. 798, 809 (1982)).  Probable cause exists "when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (quoting Illinois v. Gates, 462 U.S. at 238).

Here, even assuming that the entry into Byrd's truck with the key fob and the moving of the vehicle to the FBI lot constituted a search for which probable cause was required, it is plain that there was probable cause for the agents to believe that the car contained contraband or evidence of a crime at the time that they entered and moved the car.  As the affidavit in support of the subsequently-sought search warrant recounts, on May 10, 2023, a federal grand jury returned an indictment against Byrd for attempted possession with intent to distribute cocaine and armed carjacking, and a warrant was issued for Byrd's arrest that same day.  (Rental Affid, ¶ 5.)  Byrd was arrested on May 22, 2023 at the Philadelphia Passport office and when asked how he got into the city by investigators, he attempted to conceal the existence of his rental vehicle by first telling them he took the bus and then telling them that he took the subway.  (Id. ¶¶ 19, 20.)  The falsity of these statements was apparent to investigators who, upon searching Byrd incident to his arrest, found him to be in possession of a key fob to a rental vehicle.  (Id. ¶ 20.)  The rental vehicle was located in a nearby garage, and investigators could see a

cell phone and black balaclava/ski mask in the vehicle in plain view.[6]  (Id. ¶¶ 12, 21.)  The balaclava/ski mask was consistent with what Byrd was wearing in video footage from the FedEx truck that was carjacked.  (Id. ¶ 12, 21.)  In addition, Agent Donohue believed, based on his experience and training, that the cell phone was likely to have been used for illicit activities because he knew that Byrd had used cell phones to communicate around the time of the carjacking, investigators had already recovered two other cell phones from Byrd in the search of his person incident to his arrest, and it was likely that he would leave a cell phone that he used for illicit activities in his vehicle given the security around the passport office.  (Id. ¶ 31.)  These facts, in combination with the other numerous other facts and circumstances that led to Byrd's arrest that day, certainly resulted in a "fair probability that . . . evidence of a crime w[ould] be found in" the rental truck.  Hodge, 246 F.3d at 305 (quoting Gates, 462 U.S. at 238).  Thus, pursuant to the automobile exception, we can only conclude that the investigators had the requisite probable cause to seize and impound the truck without a warrant prior to obtaining a search warrant to thoroughly search the vehicle.  We therefore deny Byrd's Motion insofar as it seeks suppression of the evidence seized from the truck or seeks a Franks hearing concerning alleged false statement in affidavit giving rise to the rental vehicle search warrant.

---

[6]  Byrd argues that two statements in the affidavit in support of the warrant are false.  First, he asserts that "[i]t is highly unlikely an individual would be driving around with a black ski mask in May and leave it in a visible place of a vehicle if in fact they were using it for a nefarious purpose."  (Byrd Mem. at 26.)  He has, however, made no offer of proof to show that there was no mask in the truck, or that there was a mask in the truck but it was not in plain view.  Similarly, he contends that he is entitled to a Franks hearing concerning the rental truck  warrant because the affidavit "fails to provide evidence that Byrd was the sole occupant of the vehicle" or that the evidence in the truck belonged to him.  (Byrd Mem. at 31.)  However, as stated in the affidavit and unchallenged, Byrd was in possession of the key fob for the truck and tried to hide the presence of the truck from authorities.  (See Rental Affid. ¶¶ 19-20.)  Moreover, he presents no evidence that there were other occupants of the truck or that any contents of the vehicle  belonged to someone else.  Accordingly, he has made no substantial preliminary showing of any false statement or omission that would support the holding of a Franks hearing.

**IV.      CONCLUSION**

For the foregoing reasons, we deny Byrd's "Motion to Suppress Evidence and Request for

Franks Hearing" in its entirety.  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.