IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| RONALD BYRD | : | NO. 23-209-1 |

**MEMORANDUM**

On June 11, 2025, a jury found Defendant Ronald Byrd, along with his co-defendant Saikeen Dixon, guilty of carjacking in violation of 18 U.S.C. § 2119 (Count 2), as well as using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count 3). The jury also found Byrd guilty of attempted possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count 1). Byrd subsequently pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 4). Byrd now moves for a new trial on Counts 1-3[1] pursuant to Federal Rule of Criminal Procedure 33 on multiple grounds. For the following reasons, the Motion is denied.

**I.   LEGAL STANDARD**

Rule 33 authorizes the Court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). District courts have broad discretion in deciding whether a new trial is warranted under this standard. See United States v. Noel, 905 F.3d 258, 270 & n.7 (3d Cir. 2018) (citations omitted). The defendant bears the burden of proving that a new

---

[1] Byrd cannot seek a new trial under Rule 33 on Count 4 because he pled guilty to that Count, thereby waiving his right to a trial. See United States v. Miller, 197 F.3d 644, 649 n.3 (3d Cir. 1999) (explaining that, by pleading guilty, defendant "waived his right to a trial and his right to petition for a new trial" under Rule 33 (citations omitted)); United States v. Podsada, Crim. A. No. 03-495, 2006 WL 2403987, at *2 (D.N.J. Aug. 18, 2006) ("[I]t is well-established that the use of Rule 33 is confined to those situations in which a trial has occurred." (citations omitted)).

trial should be granted. See United States v. MacInnes, 23 F. Supp. 3d 536, 541 (E.D. Pa. 2014) (citation omitted), aff'd sub nom. United States v. Keszey, 643 F. App'x 153 (3d Cir. 2016).

**II.	DISCUSSION**

Byrd argues that a new trial should be granted under Rule 33 because: (1) the weight of the evidence does not support the jury's verdict with respect to the intent element of Count 2; (2) a search warrant that led to the discovery of key evidence was issued based on a material misstatement; (3) the jury panel was not representative on the basis of race or county of origin; and (4) the Government failed to timely disclose certain details about the circumstances of an identification by Byrd's probation officer.

A.	Intent to Cause Death or Serious Bodily Harm

Byrd first argues that the verdict as to Count 2, carjacking in violation of 18 U.S.C. § 2119, is against the weight of the evidence. Where a Rule 33 motion is premised on the verdict being against the weight of the evidence, the Court "does not view the evidence favorably to the Government but instead exercises its own judgment in assessing the Government's case." United States v. Silveus, 542 F.3d 993, 1004 (3d Cir. 2008) (quoting United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002)); United States v. David, 222 F. App'x 210, 216 (3d Cir. 2007) (noting the district court's "duty to independently weigh the evidence" on a Rule 33 motion). However, even if the Court concludes that the verdict is against the weight of the evidence, "it can grant a new trial 'only if it believes that there is a serious danger that a miscarriage of justice has occurred — that is, that an innocent person has been convicted.'" United States v. Thomas, No. 21-1610, 2023 WL 119463, at *4 (3d Cir. Jan. 6, 2023) (quoting Silveus, 542 F.3d at 1004-05). Rule 33 motions based on the weight of the evidence are "not favored and should be 'granted sparingly

2

and only in exceptional cases.'" Silveus, 542 F.3d at 1005 (quoting Gov't of Virgin Islands v. Derricks, 810 F.2d 50, 55 (3d Cir. 1987)).

At issue here is the evidence with respect to the intent element of Count 2. To establish the requisite intent under the carjacking statute, the Government must prove beyond a reasonable doubt "that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car." United States v. Boyer, No. 23-3253, 2024 WL 4357226, at *2 (3d Cir. Oct. 1, 2024) (quoting Holloway v. United States, 526 U.S. 1, 12 (1999)). A conditional intent to harm or kill if necessary to accomplish the carjacking is sufficient, but a mere bluff or empty threat is not. Id. (quoting Holloway, 526 U.S. at 3, 11). "Whether a defendant had the requisite intent is judged by the totality of the facts and circumstances." Id. (citing United States v. Anderson, 108 F.3d 478, 485 (3d Cir. 1997)). Byrd argues that there was no evidence of his intent to harm the driver of the carjacked truck, Jabari Harris. He maintains that Harris fled immediately upon seeing him approach with a gun, and there was no evidence that he was even aware of Harris's presence, let alone confronted, threatened, or pursued Harris.

Contrary to Byrd's assertion, there was evidence of his intent to harm or kill Harris if necessary to commandeer the truck. The evidence showed that on the day of the carjacking, Byrd was attempting to obtain a package containing cocaine worth hundreds of thousands of dollars, which he believed was in Harris's truck. Government informant P.A. testified that Byrd repeatedly told him to get the package from Harris, including by offering thousands of dollars for it. P.A. testified that Byrd displayed the gun he would later point at Harris and that he described retrieving the cocaine as a "life-or-death situation." Byrd acted accordingly, employing increasingly desperate measures to recover the cocaine that began with pressuring P.A. and ended with pursuing

3

Harris's truck across the city, cutting it off at an intersection, donning a balaclava, and stealing the vehicle at gunpoint. See United States v. Johnson, 222 F. App'x 153, 155 (3d Cir. 2007) (explaining that intent to seriously harm or kill "may be established indirectly through [the carjacker's] own actions, or through actions of his coconspirators" (citation omitted)).

Moreover, Byrd did not merely approach the truck with a gun. Eyewitnesses testified that he pointed the gun at Harris, who so feared for his life that he fled the truck and ran into oncoming traffic. That the victim's terror made it unnecessary for Byrd to verbally threaten or employ violence does not undermine the evidence that he was prepared to harm or kill if needed. Cf. United States v. Burney, 35 F. App'x 354, 355 (3d Cir. 2002) (affirming denial of new trial on carjacking conviction where victim immediately relinquished car at gunpoint because "[n]o explicit verbal threat to harm or to kill is required"). Upon independent review of the record, the Court concludes that the jury's finding of intent on Count 2 was not against the weight of the evidence, and did not constitute a miscarriage of justice sufficient to merit a new trial under Rule 33.

B. Misstatement in Search Warrant

Byrd next argues that a new trial should be granted because critical evidence in the Government's case against him was obtained based on an improper search warrant. Prior to trial Byrd filed a motion to suppress in part the backup data from two Apple iCloud accounts. After a hearing, the motion to suppress was denied by the Honorable John Padova (Dkt. #93). Byrd contends that the affidavit in support of a warrant to search his iCloud account asserted that there was surveillance footage of individuals suspected to be Byrd and P.A. conversing on the day of the carjacking, which corroborated P.A.'s account of their interactions. (See iCloud Affidavit (Gov't Resp. Ex. A) ¶ 25 ("PPD detectives reviewed footage that showed . . . the occupant of

[P.A.'s Nissan Pathfinder] communicating with the occupant of the black Jeep Cherokee.").) Byrd now contends this footage was never produced in discovery or at trial. Byrd further contends that because such footage was never produced that the statement was false regarding the conversation that occurred between Byrd and P.A. was false. Byrd argues that a new trial is warranted because the warrant was upheld on a motion to suppress and key evidence was discovered based in part on this false statement.

As an initial matter, Byrd does not dispute that he received all recovered surveillance footage, and was thus aware of his basis for challenging the affidavit, well in advance of trial. Indeed, the Government states, and Byrd does not contest, that it (1) produced all recovered surveillance footage and associated discovery to Defendants in June 2023, well before Byrd filed his motion to suppress on March 19, 2024, and (2) expressly confirmed to Byrd's counsel in April 2024, while the motion was still pending, that all footage had been produced. (See Gov't Resp. at 7.) Yet Byrd failed to mention the supposed misstatement in his motion to suppress, to file a motion for reconsideration after suppression was denied, or to otherwise lodge any objection on this basis before or during trial. For this reason alone, the purported misstatement does not entitle him to a new trial. See United States v. McKnight, 568 F. App'x 178, 181 (3d Cir. 2014) (affirming denial of Rule 33 motion based on misstatement in arrest warrant because the defendant was aware of the purported misstatement before trial).

The Court is also not persuaded that the issue Byrd identifies would invalidate the warrant or alter the outcome of the motion to suppress the iCloud evidence. To be entitled to even a hearing on the alleged misrepresentation under Franks v. Delaware, 438 U.S. 154 (1978), Byrd must first make "a 'substantial preliminary showing' that the affiant knowingly or recklessly included a false statement in or omitted facts from the affidavit." United States v. Pavulak, 700 F.3d 651, 671 (3d

5

Cir. 2012) (quoting United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006)). He "cannot rest on mere conclusory allegations or a 'mere desire to cross-examine,' but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses." Yusuf, 461 F.3d at 383 n.8 (quoting Franks, 438 U.S. at 171). Byrd offers no direct proof that the disputed footage never existed or that police never reviewed it. And neither of those things can be reasonably inferred from the mere fact that the footage was never produced to Defendants, particularly where obtaining the footage for trial would have been in the Government's interest.[2] Thus, Byrd fails to make a substantial preliminary showing that the challenged statement was false. See Pavulak, 700 F.3d at 671 ("[W]ithout identifying false information, [defendant] was not entitled to a post-trial *Franks* hearing and, consequently, to a new trial.").

Byrd also falls short of making the requisite showing "that the false statements or omitted facts were 'necessary to the finding of probable cause.'" Id. (quoting Yusuf, 461 F.3d 374, 383). As Judge Padova detailed in denying Byrd's pretrial motion to suppress the iCloud evidence, the affidavit at issue contained "ample independent verification of enough important aspects of P.A.'s account to support P.A.'s credibility and to permit reliance on his account in establishing probable cause." United States v. Byrd, Crim. A. No. 23-209, 2024 WL 2832445, at *7 (E.D. Pa. June 4, 2024). Byrd does not explain why, even without the alleged misstatement, there would be no probable cause based on P.A.'s account and the other independent evidence substantiating it. Thus, he satisfies neither prong of the Franks analysis and offers no reason to conclude that the motion to suppress would be decided differently in advance of any new trial.

---

[2] The Government represents that while investigators reviewed the footage, as attested in the affidavit, they were ultimately unable to obtain a copy. This is consistent with P.A.'s Arrest Report, which references the same footage and specifically notes that it "was unable to be recovered at [the] time" when it was reviewed. (Gov't Resp. Ex. B at 2 of 4.)

For all of these reasons, the alleged misstatement in the iCloud warrant affidavit provides no basis for a new trial.

C. <u>Unrepresentative Jury Panel</u>

Byrd next argues that a new trial should be granted because the jury panel, which included only two African Americans and four Philadelphians, deprived him of a jury drawn from a fair cross-section of the community in violation of the Sixth Amendment and 28 U.S.C. § 1861, the Jury Selection and Service Act. To prevail on a constitutional or statutory fair-cross-section challenge, a defendant must first make a prima facie showing of: "(1) a distinctive group in the community (2) that was not fair[ly] and reasonab[ly] represented among potential jurors compared with its representation in the community (3) because of systematic exclusion of the group in the jury-selection process." <u>United States v. Savage</u>, 970 F.3d 217, 254 (3d Cir. 2020) (alterations in original) (quotations omitted). Byrd contends that because his panel was unrepresentative, he was deprived of a jury of his peers and jurors were ill-equipped to properly assess evidence about the area where the crime took place, necessitating a new trial.

Byrd waived his right to challenge the panel makeup based on residency by failing to object on that basis during voir dire. "The appropriate time for objecting to the composition of the jury venire is 'before the voir dire examination begins,'" so long as the basis for the challenge is known. <u>United States v. Murphy</u>, 464 F. App'x 60, 62 (3d Cir. 2012) (quoting 28 U.S.C. § 1867(a), (e)). Byrd was made aware of the panel's residency composition at the start of voir dire, when all parties received a spreadsheet with basic details about each panelist, including county of origin. Co-defendant Dixon timely raised an objection based on underrepresentation of African American jurors, which Byrd joined, however neither Defendant made any objection based on underrepresentation of Philadelphia jurors. Thus, Byrd waived his right to object on the basis of

7

residency. See id. (deeming constitutional and statutory panel composition challenge waived because defendant failed to timely object in compliance with § 1867); Gilmore v. Macys Retail Holdings, Inc., 385 F. App'x 233, 238 (3d Cir. 2010) ("A challenge to the composition of the jury must be made contemporaneously, or it is waived." (citations omitted)).

Regardless, Byrd falls far short of making out even a prima facie case of a fair-cross-section violation. His argument fails out of the gate as he makes no attempt to prove, or even expressly assert, systemic exclusion of any group. Savage, 970 F.3d at 259-61 (explaining that systemic exclusion is shown by evidence of facially exclusionary jury-selection processes or consistently disproportional representation over time). Likewise, his mere recitation of the raw number of African American and Philadelphian jurors on the panel, without any point of comparison, is insufficient to show that those groups were unfairly and unreasonably underrepresented. Id. at 255-259 (explaining that underrepresentation looks to the degree of any disparity between representation on jury pools and in the district as a whole); United States v. Weaver, 267 F.3d 231, 240 (3d Cir. 2001) (describing representation element as "a mathematical exercise," where arguments "must be supported by statistical evidence" (citing Duren v. Missouri, 439 U.S. 357, 364 (1979))). Byrd's fair-cross-section rights do not guarantee him a jury panel "of any particular composition," but rather, jury selection processes that do not "*systematically exclude distinctive groups in the community*." Weaver, 267 F.3d at 236 (quoting Taylor v. Louisiana, 419 U.S. 522, 527 (1975)). He makes no showing that those rights were violated here.[3] Equally unpersuasive is

---

[3] The Third Circuit has observed that "[w]here the government is engaged in on-going efforts to improve the representativeness of jury lists, it is less likely that the data reflects that under-representation is due to a systematic exclusion in the jury process." Howell v. Superintendent Rockview SCI, 939 F.3d 260, 270 (3d Cir. 2019) (citing Ramseur v. Beyer, 983 F.2d 1215, 1235 (3d Cir. 1992)). Thus, it is notable that the United States District Court for the Eastern District of Pennsylvania is actively refining its jury-selection processes to produce jury pools more representative of the district's population. See generally Hon. Juan R. Sánchez, *A Plan of Our Own: The Eastern District of Pennsylvania's Initiative to Increase Jury Diversity*, 91 Temp. L. Rev. 1 (2019). The Court is also conducting more general outreach to educate the public about the importance of jury service and boost juror turnout across the district. See, e.g., E.D. Pa., Your Voice Matters in the Courtroom,

his claim that jurors from outside Philadelphia were incapable of receiving and evaluating evidence of any relevant local geography. None of this satisfies the standard for a new trial under Rule 33.

### D. Late Disclosure of Identification Evidence

Byrd's final argument is that the Government's late disclosure of information about the circumstances of Byrd's identification by his probation officer, A.S., impeded his ability to challenge the identification. During the investigation, A.S. reviewed surveillance footage of the carjacking and identified the armed carjacker as Byrd based on her 15-20 meetings with him since her supervision began in 2020. The Government also called A.S. at trial to identify Byrd in the same footage before the jury. Byrd asserts, however, that the day before A.S.'s testimony, the Government informed him that A.S. had received the footage of the carjacking from a fellow probation officer, not from law enforcement directly. Byrd argues that a new trial is necessary because this last-minute disclosure hampered his ability to investigate the circumstances of the identification and to seek suppression or challenge it on cross-examination.

Byrd's objection on this ground was overruled at trial because he failed to identify any reason that the Government was required to turn over the information, or any prejudice that resulted. His argument here fares no better. He still does not establish that disclosure of this information was required because it was, e.g., exculpatory or impeaching. See Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972). Regardless, the Government *did* inform Byrd of the information promptly upon learning it and before A.S.'s testimony. Despite overruling Byrd's objection, the Court granted his counsel time to speak with A.S. outside of the courtroom prior to her testimony. Byrd had the opportunity to cross-examine A.S. about her receipt of the video, or even to seek testimony from the coworker who provided the video, to

---

https://www.paed.uscourts.gov/sites/paed/files/documents/jury/JuryDutyBrochure.pdf.

attempt to undermine the identification before the jury. Thus, Byrd's receipt of this information did not prejudice his defense at trial.

Even Byrd's pretrial motion to suppress the identification, which was denied by Judge Padova, would fare no better with the new information. Byrd argues that he could have used the information to bolster his claim that A.S. received the video under suggestive circumstances that influenced her identification. He does not, however, explain why receiving the video from a colleague was somehow more suggestive than receiving it directly from investigators. Regardless, in denying Byrd's motion to suppress, Judge Padova already presumed that the circumstances were suggestive, a premise that was also conceded by the Government. (See Dkt. #155 at 2 n.1). Judge Padova nonetheless concluded that there was no substantial risk of misidentification because A.S. was well-acquainted with Byrd from their numerous and varied interactions and was therefore unlikely to be influenced by suggestion.[4] (Id.) Additional evidence of suggestiveness, the existence of which is still speculative at best, would not have altered this conclusion. Accordingly, the supposedly late disclosure did not prejudice Byrd's defense or the Court's suppression decision, and cannot justify the grant of a new trial.

Byrd makes one last-ditch argument: that prejudice from the late disclosure about A.S.'s identification, combined with a lack of corroborating evidence of a meeting between Byrd and P.A. regarding a test package sent prior to the cocaine and of Byrd's connection to the cocaine supplier, cumulatively justify a new trial. He does not explain how these issues are connected, or any way in which they compound each other. He does not even explain why the Government was specifically required to prove the existence of the test package meeting or his connection to the supplier. He cites no supporting authority. This argument is underdeveloped to the point of

---

[4] Many of A.S.'s interactions with Byrd occurred during COVID when he was masked, as he was in the video.

waiver. See Carolyn S. v. Comm'r of Soc. Sec., Civ. A. No. 21-10858, 2022 WL 4550628, at *4 (D.N.J. Sept. 28, 2022) ("The Court is not obligated to consider . . . undeveloped arguments." (collecting cases)). It is also wrong. There was evidence of the test package meeting in both P.A.'s testimony and consistent call and cell site records. There was also evidence of Byrd's connection to the shipper of the drugs, namely the shipping label he texted to P.A. in advance. Most importantly, there was evidence of Byrd's knowledge of the cocaine, including his statement to P.A. that the package contained "work" (meaning drugs) and the extreme lengths to which he went to obtain it. These arguments are no more compelling lumped together than they are individually, and they do not entitle Byrd to a new trial.

### III.   CONCLUSION

For the foregoing reasons, we conclude that Byrd has failed to meet his burden of proving that a new trial is warranted under Rule 33. Accordingly, the Motion is denied. An appropriate Order follows.

Dated: September 4, 2025                                                BY THE COURT:

                                                                        _____
                                                                        GAIL A. WEILHEIMER, J.